UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                              :
RAYMOND TREZZA,
                                                              :
                           Plaintiff,                              06 Civ. 11509 (PKC) (DF)
                                                              :
         -against-                                                 **MEMORANDUM AND**
                                                              :    **OPINION**

NRG ENERGY, INC., NRG ASTORIA GAS                             :
TURBINE OPERATIONS INC., and ARTHUR KILL
OPERATIONS, INC.,                                             :

                                                              :
                           Defendants.
------------------------------------------------------------------------X

**DEBRA FREEMAN, United States Magistrate Judge:**

    This action was referred to me by the Honorable P. Kevin Castel for general pretrial supervision. Currently before the Court is a motion by plaintiff Raymond Trezza ("Trezza") to amend his Complaint pursuant to Fed. R. Civ. P. 15(a). For the reasons set forth below, Trezza's motion to amend is granted in part and denied in part.

## BACKGROUND

### A.    Trezza's Allegations and His Proposed Amendment

    According to Trezza's Complaint and his motion papers, Trezza was employed by defendants NRG Energy, Inc., NRG Astoria Gas Turbine Operations Inc., and Arthur Kill Operations, Inc. (collectively, "Defendants"), first as a mechanic, and then as a gas turbine operator, at an electricity generating plant in Astoria, Queens. (*See* Complaint, dated Oct. 30, 2006 ("Compl."), at ¶¶ 8-9; *see also* Reply Memorandum of Law of Plaintiff Raymond Trezza in Further Support of Motion for Leave To Amend Complaint, dated June 21, 2007 ("Pl. Reply

Mem."), at 1.) In 2004, after suffering injuries on the job, Trezza took an extended disability leave from his employment, and was eventually terminated by Defendants, on April 7, 2005. (*See* Compl., at ¶¶ 10-12, 18-19.) This led to the instant lawsuit, in which Trezza alleges that, rather than fire him, Defendants should have provided a reasonable accommodation for his disability, and that their failure to do so violated both the Americans with Disabilities Act of 1990, 42 U.S.C. § 12111, *et seq*. (the "ADA"), and the Rehabilitation Act of 1973, 29 U.S.C. §§ 701-796b, *et seq*. (the "Rehabilitation Act"). Trezza also alleges that his termination violated the Family Medical Leave Act, 29 U.S.C. § 2612, *et seq*. (the "FMLA"),[1] as well as certain state and local civil rights laws.

The primary focus of Trezza's motion to amend is paragraph 24 of his Complaint, in which he alleges that Defendants resented the fact that, in his role as a shop steward for his union, Trezza had reported to the union certain "alleged security violations of Defendants relating to 9/11." (Compl., at ¶ 24.) According to the Complaint, Trezza was told that his reporting of these security violations would result in his being fired. (*See id*.) The Complaint then charges that "Defendants followed through on their threat" (*id.*), thus suggesting that Defendants failed to accommodate Trezza's disability (and instead terminated him) for a specific retaliatory reason.

In his motion to amend, Trezza seeks leave to modify this paragraph by adding language suggesting a second motive for Defendants' conduct: specifically, that they were displeased that Trezza had argued with them over "improprieties" in Defendants' reporting of the Astoria power plant's so-called "unit availability." (Proposed Amended Complaint, dated May 30, 2007

---

[1] In alleging a violation of the FMLA, Trezza incorrectly cites 29 U.S.C. § 2260 as the applicable statute. (*See* Compl., at 1.)

("Proposed Am. Compl."), at ¶ 24.) In his motion papers, Trezza explains that, as a union shop steward, it was one of his "essential functions" to confirm that the gas turbine plant operators at the plant were accurately reporting the availability of electricity generation "units." (*See* Memorandum of Law of Plaintiff Raymond Trezza in Support of Motion for Leave To Amend Complaint, dated May 29, 2007 ("Pl. Mem."), at 1.) Apparently (although this is not entirely clear from Trezza's papers), Defendants could only seek to be paid by Con Edison or other customers for the plant's "capacity" to generate electricity when the plant reported to their customers that it had sufficient "unit availability." (*See id.* at 2-3.) Trezza suggests that Defendants therefore had an interest in falsely reporting unit availability. (*See id.* at 3; Proposed Am. Compl., at ¶ 24.) He seeks to allege that he had argued with Defendants about his need to confirm the accuracy of unit availability reporting, and that Defendants told him that they would fire him as a result of their "conflict" with him on this issue. (Proposed Am. Compl., at ¶ 24.) Although his proposed Amended Complaint does not go so far as to allege that Defendants actually submitted, or planned to submit, false statements to Con Edison or any other customer or regulatory authority, this is the plain implication of Trezza's proposed allegations; indeed, in an earlier letter to the Court, Trezza's counsel made this clear, describing the issue as relating to the "misreporting" of unit availability, and stating that "Defendants did not want [P]laintiff . . . to remain employed to witness [such] violations." (Letter to the Court from Nelson M. Stern, Esq., dated Mar. 21, 2007.)

Trezza also seeks leave to modify paragraph 19 of his Complaint, which, in its original form, alleges that he "was fired for expiration of his sick benefits . . . ." (Compl., at ¶ 19.) Trezza seeks to change that language to read that he "was fired for expiration of his sick benefits and for being disabled . . . ." (Proposed Am. Compl, at ¶ 19.) In addition, Trezza seeks to add to

3

this paragraph two new factual allegations: that "Defendants stated on the Termination Form that Plaintiff was eligible for rehiring," and that "Defendants never conducted an Exit Interview of Plaintiff." (*Id.*)

Defendants oppose Trezza's motion to amend to the extent he seeks to modify the allegations of paragraph 24 (regarding the parties' alleged conflict over "unit availability"), but do not challenge the proposed modification of paragraph 19.

### B. Procedural History

In order to place Trezza's motion in context, it is necessary to have some understanding of the history of this case, especially with regard to the timing and manner in which the issue of "unit availability" has been raised by Trezza.

#### 1. Trezza's Initial Silence on the Issue of Unit Availability

As noted above, Trezza's Complaint, as originally pleaded, contains no allegation regarding any conflict over the issue of the accurate reporting of unit availability. On the contrary, the Complaint specifies only that Trezza was told that he would be fired for reporting to his union "alleged security violations of Defendants relating to 9/11." (Compl., at ¶ 24.) Beyond that, in two sets of initial disclosures, dated January 26 and 29, 2007, Trezza makes absolutely no reference to any conflict between the parties regarding the reporting of unit availability. (*See* Affidavit of Hugh F. Murray, III, Esq., sworn to June 13, 2007 ("Murray Aff."), Exs. A and B.) Equally silent on this point are Trezza's February 1, 2007 responses to Defendants' discovery requests, which provide details regarding the alleged threats to fire Trezza over 9/11 security issues, but no information regarding any other supposed threats of termination. (*See id.*, Ex. C.)

On March 13, 2007, Defendants deposed Trezza, and asked him specifically about his understanding as to why he was fired. (*See id.*, Ex. D, at 198-99.) Trezza provided a number of

4

reasons as to why he believed he was terminated, including that he had made reports about the plant's inability to comply with a post-9/11 security plan because of a lack of training and manpower; that he was disliked by his supervisor (Mike Schatz, who was the person who allegedly threatened Trezza with termination over the issue of his reporting of 9/11 security violations); and that he was a shop steward. (*See id*.) When then asked, "Are there any other reasons why you believe you were terminated?" Trezza responded, "No." (*Id*.) Trezza said nothing in his testimony regarding any friction – or threats made to him – over the issue of unit availability reporting. (*See generally id.*, Ex. D.)

### 2. Trezza's Counsel's March 14, 2007 E-mail to Opposing Counsel, and the Court's Issuance of a Protective Order

Despite this history, Trezza's counsel sent an e-mail to Defendants' counsel after Trezza's deposition, asking that, prior to Mr. Schatz's upcoming deposition, Defendants produce a large volume of documents relating to unit availability, including "ALL [gas turbine plant operator] Incident Reports." (Murray Aff., Ex. E (emphasis in original).) The e-mail contained the further statement:

> This will make them understand I can be a witness for Public Fraud with the Feds and the Attorney General[']s Office. [A]so let them know we need the Docs to cross[-]reference reported availability with their Main Customer Con Edison.

(*Id*.) The e-mail then went on to state: "At this time and until Friday March 15, Mr. Trezza will reduce his settlement demand to **$3 million**." (*Id*. (emphasis in original).) Two days later, Trezza's counsel reportedly sent another e-mail to opposing counsel, stating, "Please respond to our revised settlement demand. Will I be working this weekend in preparation for Mr. Schatz's deposition?" (*See* Letter to the Court from Hugh F. Murray, III, Esq., dated Mar. 19, 2007, at 2.)

Defendants brought these e-mail messages to the Court's attention, asserting that Trezza's counsel appeared to be attempting to coerce a settlement by threatening criminal action against Defendants, in violation of New York Disciplinary Rule 7-105. (*See id.*; *see also* D.R. 7-105 ("A lawyer shall not present, participate in presenting, or threaten to present criminal charges solely to obtain an advantage in a civil matter.").)[2] It was at that point that Judge Castel referred the matter to this Court for supervision. (Dkts. 13, 14.)

After reviewing the parties' correspondence and holding a conference with counsel, this Court granted Defendants a Protective Order, denying Trezza access to Defendants' documents regarding unit availability, and limiting Trezza's ability to inquire into this subject at Mr. Schatz's deposition. In particular, as Trezza had not demonstrated – either by the allegations contained in his Complaint or by his own testimony – that the issue of unit availability was relevant to any claim that he had pleaded in the action (*see* Fed. R. Civ. P. 26(b)(1)), the Court ruled as follows:

> . . . Under the circumstances, the Court is hard-pressed at this time to see the relevance of unit availability reports to any claim asserted by Trezza in this action. Accordingly, Defendants' motion for a protective order is granted to the extent it seeks to prevent Schatz from being questioned broadly regarding the subject of "unit availability" and regarding Defendants' practices in reporting such availability.

---

[2] Trezza's counsel denies that he ever intended to attempt to coerce a settlement by improper means, asserting that the seeming threat that he or his client could be a prosecution witness against Defendants was included inadvertently in counsel's March 14, 2007 e-mail. According to Trezza's counsel, his client had sent him an earlier e-mail message containing this "over zealous suggestion," which "was dismissed." (Pl. Reply Mem. at 4.) Trezza's counsel states that he accidentally cut and paste his client's entire privileged communication into the e-mail to opposing counsel, when he had merely intended to include the list of documents that his client had asked him to request. (*See* Letter to the Court from Nelson M. Stern, Esq., dated Mar. 19, 2007, at 1.)

> The Court notes, however, that, under the liberal discovery rules, a plaintiff must be afforded fairly wide latitude in developing evidence that *is* related to his claims. In recognition of this principle, it is not the Court's intention to prevent Trezza's counsel from questioning Schatz regarding his personal knowledge as to any reasons why Trezza may have been denied a requested accommodation, or the reasons why Trezza was terminated. In that context, counsel may question Schatz regarding any specific incidents that may have created friction between him and Trezza, including any incidents that may have arisen as a result of Trezza's role as Shop Steward. Should counsel adduce testimony that suggests the relevance of any unit availability reports, Trezza may then move, as necessary, to seek additional discovery on this topic.

(Order, dated May 7, 2007 (Dkt. 16).)

Apparently, Mr. Schatz did not give any deposition testimony that opened the door to the question of any strife between Trezza and Defendants on the issue of unit availability reporting, and Trezza made no renewed request for such discovery following the deposition. Rather, even before Mr. Schatz's deposition commenced, Trezza opted to pursue a different approach to injecting the issue of "unit availability" into this litigation.

### 3. <u>Trezza's Motion To Amend</u>

By letter to the Court dated May 17, 2007, six days before Mr. Schatz's scheduled deposition, Trezza requested leave to amend his Complaint to include allegations of "conflict concerning Unit Availability." (Letter to the Court from Nelson M. Stern, Esq., dated May 17, 2007.) This Court directed the parties to brief the question of whether the proposed amendment should be permitted. Trezza filed a formal motion to amend on June 1, 2007. (Dkts. 20, 21.)

In his motion papers, Trezza now argues that "[t]he issue of unit availability is in fact pivotal to [P]laintiff's claims." (Pl. Reply Mem. at 2.) Indeed, Trezza states that "Defendants' refusal to provide any accommodation for [P]laintiff's disability is *incomprehensible* without an

7

understa[nd]ing of the repeated arguments over unit availability that [P]laintiff had with his supervisor Michael Schatz." (*Id*. (emphasis added).)

As to why this supposedly critical issue was not raised in the Complaint, Trezza offers two different explanations. First, he asserts that "the phrase *inter alia* was inadvertently omitted from the list of disputes" referred to in the Complaint (*id*.), although the Court notes that paragraph 24 – which is the relevant paragraph here – did not actually include a list of, or even a reference to, "disputes," but rather stated only that Defendants "resented the fact that when Plaintiff was the Shop Steward he reported to his Union alleged security violations of Defendants relating to 9/11," that Trezza was informed that he would be fired "because of his reporting the violations," and that "Defendants followed through on their threat." (Compl., at ¶ 24.) Trezza's second explanation for his failure to raise the "unit availability" issue in the Complaint is that his counsel did not fully understand that "issues under the responsibilities of a Shop Steward intrinsically include disputes over Unit Availability." (Pl. Reply Mem. at 2.)

Defendants argue that Trezza should not be permitted to amend the Complaint so as to add allegations regarding unit availability, on the principal grounds that Trezza is seeking the amendment in bad faith and that the motion to amend is untimely. On the question of timeliness, Defendants point out that, under the Court's Case Management Plan and Scheduling Order, dated January 12, 2007 (Dkt. 11[3]), any such motions were supposed to have been made by February 12, 2007, and that Trezza failed to meet that deadline.

---

[3] Although the Court's Docket indicates that this Scheduling Order was signed by Judge Castel on January 15, 2007, that entry appears to be in error, as the Order appears to reflect a signature date of January 12, 2007.

## DISCUSSION

Rule 15(a) of the Federal Rules of Civil Procedure provides that the Court "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a). A motion to amend a pleading under Rule 15(a) should be denied, however, "if there is an 'apparent or declared reason – such as undue delay, bad faith or dilatory motive . . . , repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of an amendment, [or] futility of amendment.'" *Dluhos v. Floating and Abandoned Vessel Known as "New York,"* 162 F.3d 63, 69 (2d Cir. 1998) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *accord Richardson Greenshields Secs., Inc. v. Lau*, 825 F.2d 647, 653 n.6 (2d Cir. 1987) (citation omitted). The Court has broad discretion to determine whether to grant a motion to amend based on the relevant factors. *See Local 802, Associated Musicians of Greater New York v. Parker Meridien Hotel*, 145 F.3d 85, 89 (2d Cir. 1998).

In this case, while the Court is reluctant to tar Trezza or his counsel with a finding that the conduct of either was in "bad faith," the facts set forth above are, at a minimum, strongly suggestive of the fact that Trezza never actually believed that he was fired because of any position he took on the subject of unit availability, but rather has tried to inject this issue into the case to gain leverage in settlement negotiation. Trezza's counsel's explanation that the issue was always intended to be in the case seems disingenuous, given (1) the actual language of the Complaint, (2) the content of Trezza's initial disclosures, in which Trezza not only failed to disclose any evidence regarding the supposedly "pivotal" unit availability issue, but also failed to disclose the names of four of the six witnesses who, he now says, are knowledgeable on the issue

9

(*see* Pl. Mem. at 3; Murray Aff., Exs. A, B); (3) the content of Trezza's responses to Defendants' discovery demands; and (4) Trezza's own deposition testimony.

There is also an issue here as to potential prejudice to Defendants, should the proposed amendment be permitted at this stage. But for the amendment, discovery in this matter is complete. Should the Court grant Trezza leave to add his allegations regarding unit availability, both Trezza and Defendants would likely need additional discovery into that new factual issue, requiring re-opening of the discovery process and enlargement of its scope. While Trezza asserts that any additional discovery he may need would be "minimal" (Pl. Mem. at 3), the Court notes that the document request contained in his counsel's March 14, 2007 e-mail, when counsel previously sought to press this issue, appeared to seek a large volume of documents. (*See* Murray Aff., Ex. E (calling for production of "(1) All GTPO Incident Reports; (2) All Operating Orders, (3) All Work Permits, (4) All Unit Availability Reports, (5) All Reports to NYSIO, and (6) All Daily Availability Reports").) Additionally, as noted above, Trezza now states that six witnesses – apart from Trezza himself – have knowledge of the unit availability issue (*see* Pl. Mem. at 3), implying that all may need to be deposed, which would delay resolution of this action and cause Defendants to incur potentially significant costs.

Further, while the usual "futility" analysis would not apply here, as Trezza is not proposing to amend his Complaint by adding a new claim that could be immediately subject to dismissal under Fed. R. Civ. P. 12(b), *see, e.g.*, *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001); *Jones v. New York State Div. of Military & Naval Affairs*, 166 F.3d 45, 55 (2d Cir. 1999), it is at least questionable as to whether Trezza's proposed amendment would be able to withstand a motion under Fed. R. Civ. P. 56(d)(1). Under that Rule, the Court is charged

with determining "what material facts are not genuinely at issue." *Id*. Trezza has given sworn deposition testimony as to the reasons why he believed he was fired, and his purported challenges to the accuracy of Defendants' unit availability reporting was not among them. Based on that testimony, it is difficult to see how the Court could find a material issue of genuine fact as to whether Trezza was fired for this reason.

The Court, however, need not determine whether the conduct of Trezza or his counsel rises to the level of bad faith contemplated by the case law construing Rule 15(a), or whether the degree of prejudice that would be suffered by Defendants if the amendment were permitted would be sufficient to justify denial of Trezza's motion under Rule 15(a)'s liberal amendment standard. Nor does the Court need to reach the question of whether a "futility" analysis under that Rule may include the Court's consideration of a potential summary judgment motion challenging the substance of the amendment, as opposed to a potential motion to dismiss. As Trezza did not seek leave to amend until after the deadline set by the Court's scheduling order, the controlling standard here is not the standard found in Rule 15(a), but rather the separate standard set out in Rule 16(b).

Rule 16(b) requires the Court to enter a scheduling order that sets a deadline for motions to amend the pleadings, *see* Fed. R. Civ. P. 16(b)(1), (3)(A), and then dictates that the schedule "may be modified only for good cause," Fed. R. Civ. P. 16(b)(4). Where a party moves to amend a pleading past the deadline set by the Court, and fails to show good cause why the amendment should be permitted, it is within the Court's discretion to deny the motion. *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000). In this case, while this Court directed

Trezza – after the deadline – to make his motion to amend, this did not relieve Trezza of the burden of demonstrating "good cause" for the proposed amendment.

The facts set forth above, as well as the Court's brief review of the pertinent Rule 15(a) factors, hardly show that Trezza has met this burden. Rather, the factual history of Trezza's proposed amendment – which at least raises serious questions as to Trezza's good faith, the potential prejudice to Defendants, and the possibility that the amendment would be futile – weighs against permitting this untimely amendment. Moreover, "a finding of 'good cause' depends on the diligence of the moving party." *Id*. (citations omitted). In this case, nothing in Trezza's motion papers or in any of his other submissions to the Court suggests that he was unaware of the facts necessary to amend his pleading until after the deadline had passed. As in *Parker*, Trezza was aware of those facts "prior to and throughout the course of this litigation." *Id.* at 341. As he had "all the information necessary" to support his proposed amendment from the outset of this case, it cannot be said that he acted with appropriate diligence. *Id*. (citing *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998) (per curiam) (finding a lack of "good cause" where "the information supporting the proposed amendment to the complaint was available to [the moving party] even before she filed suit")).

Finally, the Court notes that Trezza, himself, would not suffer undue prejudice if his proposed amendment were denied. Trezza's claims in this case are for violations of the ADA, the Rehabilitation Act, the FMLA, and related state and local law. According to Trezza, the reason he wishes to add allegations regarding Defendants' reporting of unit availability is to provide a factual basis for Defendant's purported "incentive" to violate these laws. (See Pl. Reply Mem. at 1.) None of Trezza's claims, however, requires proof of "incentive" in order to

succeed. In order to demonstrate a failure to accommodate an employee's disability under the ADA or the Rehabilitation Act, for example, a plaintiff need only establish that his employer was subject to the statute; that the plaintiff had a disability within the meaning of the statute; that he would have been able to perform the essential functions of the job with a reasonable accommodation; and that, despite notice of the plaintiff's disability, the employer refused to make a reasonable accommodation. *See, e.g.*, *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 216 (2d Cir. 2001) (ADA); *Lyons v. Legal Aid Society*, 68 F.3d 1512, 1515 (2d Cir. 1995) (ADA and Rehabilitation Act).

Further, to the extent Trezza is seeking to claim that his termination violated the ADA and/or the Rehabilitation Act, he would have to prove that he was terminated *because of his disability*, not for some other reason. *See, e.g.*, *Ryan v. Grae & Rybicki, P.C.*, 135 F.3d 867, 869-70 (2d Cir. 1998) (ADA); *Kinsella v. Rumsfeld*, 320 F.3d 309, 314 (2d Cir. 2003) (Rehabilitation Act). Similarly, while an employer's motive for terminating a plaintiff, following an FMLA leave, would be relevant to a claim for retaliation under that statute, the only relevant question there would be whether the employer fired the plaintiff in "retaliation *for [the] plaintiff's exercise of rights protected under the FMLA.*" *Kuo v. Computer Assocs. Int'l, Inc.*, No. 05-cv-3295 (DRH)(JO), 2007 U.S. Dist. LEXIS 72176, at *17 (E.D.N.Y. Sept. 27, 2007) (citation omitted) (emphasis added). Thus, Trezza's proposed allegation that he was fired not because he was disabled or because he took medical leave, but rather for a different reason – *i.e.,* because Defendants did not want him to witness the misreporting of unit availability – would undercut, rather than strengthen, any claims he may have for unlawful discharge or retaliation under the statutes he invokes. Accordingly, the disallowance of Trezza's proposed amendment should not

13

should not work any undue hardship on Trezza, with respect to his ability to establish the necessary elements of his claims.

## CONCLUSION

For all of the foregoing reasons, Trezza's motion to amend the Complaint is denied under Fed. R. Civ. P. 16(b)(4), to the extent Trezza seeks to amend paragraph 24 of the Complaint to modify the allegations contained therein. As Defendants do not object to Trezza's further amendment of the Complaint, to modify the allegations of paragraph 19, that portion of Trezza's motion to amend is granted.[4]

Counsel are directed to submit a joint status report to the Court, no later than March 12, 2008, addressing whether the amendment to paragraph 19 of the Complaint creates the need for any further discovery in this action. Counsel are also directed to jointly initiate a telephone status conference with the Court on March 14, 2008, at 11:00 a.m.

Dated: New York, New York
February 28, 2008

SO ORDERED

_____
DEBRA FREEMAN
United States Magistrate Judge

---

[4] Defendants observe that, at one point in Trezza's moving brief, Trezza states that he intends to place the issue of unit availability before a jury (see Pl. Mem. at 3), although Trezza's Complaint does not contain a jury demand. Defendants then argue that, if Trezza is seeking to amend his Complaint to add a jury demand, he should not be permitted to do so. (See Def. Mem. at 14-16.) The Court does not reach the question of whether such an amendment should be permitted, as the Court sees nothing in Trezza's proposed Amended Complaint that mentions a jury, and Trezza makes no argument that he is, in fact, trying to amend his Complaint in this respect.

14

Copies to:

Hon. P. Kevin Castel, U.S.D.J.

Nelson M. Stern, Esq.
964 Third Avenue, 5th floor
New York, NY 10155

Hugh F. Murray, III, Esq.
Murtha Cullina LLP
Cityplace 1
185 Asylum Street
Hartford, CT 06103-3469