UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RAYMOND TREZZA,                                        Case Number:  06CV11509 (PKC)

　　　　　Plaintiff,

　　v.

NRG ENERGY, INC., NRG ASTORIA GAS TURBINE
OPERATIONS INC., AND ARTHUR KILL OPERATIONS INC.,

　　　　　Defendants.
_____/

## FIRST AMENDED COMPLAINT
(Relief Demanded is Temporary and Permanent Injunction and Damages
For Discriminatory Employment Termination)

Plaintiff RAYMOND TREZZA, ("Plaintiff"), sues the defendants, NRG ENERGY, INC., NRG ASTORIA GAS TURBINE OPERATIONS INC., and ARTHUR KILL OPERATIONS INC. ("Defendant" or "Defendants"), for Injunctive Relief, litigation expenses and costs including attorneys' fees, and damages pursuant to *inter alia* Americans With Disabilities Act ("ADA", 42 U.S.C. § 12111, *et seq*,), Rehabilitation Act of 1973 ("Rehab Act", 29 U.S.C. § 701-796b, *et seq.)*, Family Medical Leave Act, ("FMLA", 29 U.S.C. § 2260 *et seq*,), New York State Human Rights laws (N.Y. Exec. Law § 296 *et seq.*) and New York City Human Rights laws (N.Y.C. Admin. Code, Title 8, § 8-107).

## JURISDICTION AND VENUE

1.　　Pursuant to 28 U.S.C. §  1331 and 28 U.S.C. §  1343, this Court has been given original jurisdiction over actions which arise from the Defendant's violations of Title I of the ADA.

2.　　Venue lies in the judicial district of the property situs, in this case, the Defendant has property and is doing business within this judicial district.

1

## STATUTORY BACKGROUND

3. On July 26, 1990, Congress enacted the Americans with Disabilities Act of 1990, establishing important civil rights for individuals with disabilities, including the right to full and equal employment .

4. Among other things, Congress made findings in 42 .S.C. § 12101 (a)(1)-(3), (5) and (9) that included:

   a. Some 43,000,000 Americans have one or more physical or mental disabilities, and this number is increasing as the population as a whole is growing older;

   b. historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem;

   c. discrimination against individuals with disabilities persists in such critical areas as employment, housing, public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting and access to public services;

   d. individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and regulation to lesser services, programs, activities,

benefits, jobs or other opportunities; and

e.      the continuing existence of unfair and unnecessary discrimination and

prejudice denies people with disabilities the opportunity to compete on an

equal basis and to pursue those opportunities for which our free society is

justifiably famous, and costs the United States billions of dollars in

unnecessary expenses resulting from dependency and nonproductively.

5.      Congress also explicitly stated in 42 U.S.C. §  12101 (b)(1)(2) and (4) that the

purpose of the Americans with Disabilities Act was to:

a.      Provide a clear and comprehensive national mandate for the elimination of

discrimination against individuals with disabilities;

b.      provide clear, strong, consistent, enforceable standards addressing

discrimination against individuals with disabilities; and,

c.      invoke the sweep of congressional authority, including the power to

enforce the fourteenth amendment and to regulate commerce, in order to

address the major areas of discrimination faced day-to-day by people with

disabilities.

7.      Congress provided commercial businesses at least 18 months from enactment

make their facilities compliant to the regulations in the Americans with

Disabilities Act. The effective date of Title II of the ADA was January 26,1992,

or January 26,1993, if the Defendant has ten(10) or fewer employees and gross

receipts of $500,000 or less. 42 U.S.C. §  12181; 28 CFR 36.508(a).

## THE PARTIES AND STANDING

8.  Plaintiff is a 43 year old married father of two children under the ages of 10 and is a resident of the State of New York.  Until his discriminatory termination in April 2005, he was employed by Defendants as a mechanic and had been promoted to a gas turbine operator in July 2002.

9.  Defendant is a wholesale power generation company, primarily engaged in the ownership and operation of power generation facilities and the sale of energy, capacity and related products in the United States and internationally. The Company has a diverse portfolio of electric generation facilities in terms of geography, fuel type and dispatch levels. It seeks to maximize operating income through the efficient procurement and management of fuel supplies and maintenance services, and the sale of energy, capacity and ancillary services into attractive spot, intermediate and long-term markets.

10. Pursuant to the above referenced Statutes, Plaintiff is a "qualified individual with a disability" and suffered from "physical impairment" as a result of on-job injuries to his lower lumber spine, left knee and leg and groin,  suffered on June 6, 2002, March 28, 2004 and August 13, 2004 that impaired his "major life activities" including his ability to walk and work.

11. Plaintiff took FMLA leave and his earned sick time following his injuries.

12. On October 4, 2004, Plaintiff's neurologist and orthopedist diagnosed him with Periformis Syndrome, unstable SI Joint and Sacriolitis.  They declared him "totally disabled."   Plaintiff collected Long Term Disability.

13. Plaintiff was never disciplined by Defendants and received the maximum raises allowed under his Union contract each year.

14. Plaintiff's employment compensation included a salary of $100,000 per year, pension benefits and medical insurance coverage.

15. Pursuant to the above referenced Statutes, Defendants, each of them, are "covered entities" and an "Employer."

16. There is a "record" of plaintiff's impairment and defendants regarded him as having an impairment.  Defendants made  monthly payments to Plaintiff throughout his medical leave and processed his 'sick sheets" for over 7 months.  Notwithstanding processing the sick sheets, Plaintiff's site super (Mike Schatz) made the audacious and incredulous statement that he was unaware that Plaintiff was injured.

17. Defendant's medical insurer, Kemper,  provided coverage of  Plaintiff for treatment. As a result of the on-job injuries Plaintiff was considered "temporarily totally disabled."

18. On September 25, 2004, Plaintiff  went on short term disability and  requested in writing of his Plaint Manager Tom Bishop "reasonable accommodation" in the form of (1) being transferred to posted jobs that were available and that would have accommodated his disability, and (2) to be re-trained or reclassified.  Defendant refused all of Plaintiff's requests notwithstanding the fact that there were alternative jobs available for transfer and this was required under the collective bargaining agreement between Defendants and the Utility Workers' Union of America, AFL-CIO Local 1.2.  Article IIX, Par. 22(3).  Defendants ordered Plaintiff back to work by April 6, 2005.

19. On April 7, 2005, Plaintiff was fired for expiration of his sick benefits and for being disabled rather than being placed on nonpaid leave of absence or being reassigned to another available job as was required by his Union contract.  Defendants stated on the Termination Form that Plaintiff was eligible for rehiring.  Defendants never conducted an Exit Interview of Plaintiff.   As a result, Plaintiff lost his health insurance benefits that hindered his efforts to recuperate and return to work.

20. Defendants considered Plaintiff to be unwanted as he was not an ex-Con Edison employee.

## ADA CLAIM

20. The above is incorporated.

21. The U.S. Equal Employment Opportunity Commission issued Plaintiff a Right to Sue Notice dated August 30, 2006.  See Attached Exhibit "1".

22. The Defendant discriminated and is continuing to discriminate against Plaintiff in violation of the ADA, the Rehab Act, and FMLA, by terminating his employment because of his disability.

23.  Plaintiff has retained the undersigned counsel and is entitled to recover attorney's fees, costs and litigation expenses from the Defendant pursuant to the ADA, Rehab Act and FMLA.

24.  Defendants resented the fact that when Plaintiff was the Shop Steward he reported to his Union alleged security violations of Defendants relating to 9/11.  Personnel in Defendant Management informed Plaintiff that they would fire him because of his reporting the violations.  Defendants followed through on their threat.

25. Plaintiff requested reasonable accommodation for his disability.  Defendants denied

the request and fired Plaintiff.

26. Plaintiff has been damaged there from.

## REHABILITION ACT CLAIM

27. The above is incorporated.

28. Defendants' energy business is an activity that received federal assistance and is

therefore subject to the Rehab. Act.

29. Plaintiff has a "covered disability" as he is "a qualified employee with a disability."

30. There is a record of Plaintiff's impairment and/or Defendants regard him as having an

impairment by their payment of benefits to him.

31. Plaintiff is otherwise qualified to perform the essential functions of his job with

reasonable accommodation of *inter alia* a transfer to a desk job or retraining.

32. There existed jobs that Plaintiff could have been transferred to and retraining he could

have received.  Defendants refused all of Plaintiff's requests and terminated Plaintiff.

## FAMILY MEDICAL LEAVE ACT CLAIM

33. The above is incorporated.

34.   Plaintiff took FMLA leave.

35. Upon completion of his FMLA leave, Defendants fired Plaintiff.

## PRE-COMMENCEMENT NOTICE GIVEN TO DEFENDANTS

25.     Notice to Defendant is not required.   Nevertheless, notice was provided through a

October 20, 2006 letter from attorney Nelson M. Stern.  Defendant was also

aware of Plaintiff's need for accommodation from his written request.

26.     Plaintiff is without adequate remedy at law and are suffering irreparable harm.

27.    Pursuant to the ADA, this Court is provided authority to grant Plaintiff  Injunctive

Relief including an order reinstating his employment or by closing the

Defendant's facility either temporarily or permanently until such time as the

Defendant compensates Plaintiff for his injury.

### PENDENT STATE LAW CLAIMS

28.    The above is incorporated herein.

29.    The laws of the State of New York have also been violated including N.Y. Exec.

Law Section 290 et seq. and Civ. Rights Law Section 40 *et seq.*.

30.    The law of the City of New York have also been violated including N.Y.C. Adm.

Code Section 8-107 *et seq.,*

31.    Plaintiff has been damaged there from.

**WHEREFORE**, Plaintiffs respectfully request:

**Under all claims against all Defendants**

a.    A temporary injunction and a permanent injunction reinstating Plaintiff's

employment or by closing Defendant's facility either temporarily or permanently

until such time as the Defendant compensates Plaintiff for his injury.

b.    An award of attorneys' fees, costs and litigation expenses;

c.    Damages including lost wages of $1,000,000.

d.    Such other relief as the Court deems just and proper.

Respectfully Submitted,

**LAW OFFICES OF NELSON STERN**
Counsel for Plaintiffs
964-Third Avenue, Fifth Floor
New York, N.Y.  10155
(212) 223-8330
Fax (212) 371-2131

By: *Nelson M. Stern*

_____
Nelson Stern, Esq.
(NMS8646)

Date:   March 4, 2008

To:

Hugh F. Murray III              18602406150
Murtha Cullina LLP
City Place I
185 Asylum Street, 29th Floor
Hartford, Connecticut  06103-3469

*Attorneys for defendants*